**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X   Case No. 1:20-cv-5594
KATHYANN SMART,

Plaintiff,

-against-

USA LABOR FOR HIRE, INC., RC GLOBAL          **PLAINTIFF'S REQUESTED JURY**
ENERGY GROUP, INC., and OLEG TSIMBLER,             **INSTRUCTIONS**
*In His Official and Individual Capacities,*

Defendants.
----------------------------------------------------------X

      Plaintiff, Kathyann Smart, by and through her attorneys, Phillips & Associates, PLLC, pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully requests that the Court give the following instructions to the jury, and such other instructions as may be submitted hereafter in accordance with later proceedings in this action.  Plaintiff reserves her right to amend and/or supplement her proposed jury charges in accordance with the rules of the Court.

## I.   INTRODUCTORY REMARKS

Ladies and Gentlemen of the jury, now that you have heard all the evidence in the case as well as the arguments of the lawyers, it is my duty to give you instructions as to the law applicable in this case. We are all grateful to you for the close attention you have given to this case thus far. I ask that you continue to do so as I give you these instructions.

As you know, Plaintiff, Kathyann Smart, to whom I will generally refer throughout these instructions as "Plaintiff," claims that she was subjected to unlawful discrimination in the form of a hostile work environment based on her race/color, gender/sex, and national origin, in violation of Title VII of the Civil Rights Act of 1964, and the New York City Human Rights Law; retaliation in violation of Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law by Defendants, USA LABOR FOR HIRE, INC., RC GLOBAL ENERGY GROUP, INC., to whom I will generally refer throughout these instructions as "Corporate Defendants USA LFH and RC GEG", and OLEG TSIMBLER, to whom I will generally refer through these instructions as "Defendant TSIMBLER", and collectively all defendants will be referred to as "Defendants."

My instructions will be in three parts:

First, I will give you instructions regarding the general rules that define and govern the duties of a jury in a civil case such as this;

Second, I will instruct you as to the legal elements of Plaintiff's claims; and

Third, I will give you some general rules regarding your deliberations.

## II.   ROLE OF THE COURT AND JURY

Let me start by restating our respective roles as judge and jury.

Your duty, as I mentioned in my opening instructions, is to find the facts from all the evidence in this case. You are the sole judges of the facts and it is for you and you alone to determine what weight to give the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence.

My job is to instruct you on the law. You must apply the law, in accordance with my instructions, to the facts as you find them. I remind you of your sworn obligation to follow the law as I describe it to you, whether you agree with it or not. You should not be concerned about the wisdom of any rule of law that I state. Regardless of any opinion you may have about what the law may be—or should be—it would be a violation of your oaths as jurors to base your verdict upon any other view of the law than the one I give you in these instructions.

If any of the lawyers have stated a legal principle that differs from any that I state to you in my instructions, you must be guided solely by what I instruct you about the law. You should not single out any one instruction as alone stating the law, but should consider my instructions as a whole.

Since it is your job—not mine—to find the facts, I have neither expressed nor attempted to intimate an opinion about how you should decide the facts of this case. You should not consider anything I have said or done in the course of the trial, including these instructions, as expressing any opinion about the facts or the merits of this case. For example, on occasion, I may have asked questions of a witness. You should attach no special significance to these because they were asked by the court.

### A. THE DEFINITION OF EVIDENCE

You must determine the facts in this case based solely on the evidence presented or those inferences which can reasonably be drawn from the evidence. Certain things are not evidence and are to be entirely disregarded by you in deciding what the facts are. Arguments, statements, or summations by the lawyers; objections to the questions or to the offered exhibits; and any testimony that has been excluded, stricken, or that you have been instructed to disregard are not evidence. Rather, evidence has been presented to you in the form of sworn testimony from the witnesses and exhibits that have been received in evidence.

### B. DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence: direct and circumstantial. You may use both types of evidence in reaching your verdict in this case. There is no distinction between the weight to be given to these two types of evidence. You must base your verdict on a reasonable assessment of all the evidence in the case. Direct evidence is testimony from a witness about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard.

The other type of evidence—circumstantial evidence—is proof of a chain of circumstances that points to the existence or nonexistence of certain facts. A simple example of circumstantial evidence would be as follows: Suppose you came to court on a day when the weather was clear, sunny, and dry. However, after several hours in the courtroom where there are no windows, you observe a person come in wearing a wet raincoat and another person shaking a wet umbrella. Without you ever looking outside, you would not have direct evidence that it rained, but you might infer from these circumstances that while you were sitting in court, it

rained outdoors. That is all there is to circumstantial evidence. On the basis of reason, experience, and common sense, you infer the existence or nonexistence of a fact from one or more established facts.

No significance should be attached to the fact that a document or other exhibit was introduced by one party rather than by the other. Any party is entitled to the benefit of any evidence tending to establish its contentions, even though such evidence may have come from witnesses or documents introduced by another party. You are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience. Inferences are deductions or conclusions that reason and common sense lead you, the jury, to draw from the facts that have been established by the evidence in the case. Use your common sense in drawing inferences; however, you are not permitted to engage in mere guesswork or speculation. There are times when differing inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Plaintiff asks you to draw one. Defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

In deciding the factual issues presented in this case, the test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witnesses, and evidence appeal to your minds as being most accurate and trustworthy.

## C.  WITNESS CREDIBILITY

In deciding what the facts are in this case, you must consider all the evidence that has been offered. In doing this, you must decide which testimony to believe and which testimony not to believe. You are the sole judges of credibility of the witnesses and the weight their testimony deserves. Your determination of the issue of credibility largely must depend upon the impression

that a witness made upon you as to whether or not that witness was telling the truth or giving you an accurate version of what occurred. You may choose to disbelieve all or part of any witness's testimony. In making that decision, you may take into account any number of factors, including the following:

- the witness's opportunity to see, hear, and know about the events he or she described;

- the witness's ability to recall and describe those things;

- the witness's manner in testifying—was the witness candid and forthright or did the witness seem as if he or she was hiding something, being evasive or suspect in some way;

- how the witness's testimony on direct examination compared with how the witness testified on cross-examination;

- the reasonableness of the witness's testimony in light of all the other evidence in the case;

- whether the witness had any possible bias, any relationship to a party, any motive to testify falsely, or any possible interest in the outcome of the trial; and

- whether a witness's testimony was contradicted by his or her other testimony, by what that witness said or did on a prior occasion, by the testimony of other witnesses, or by other evidence.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or in part, you may disregard the particular part you find to be false or you may disregard his or her entire testimony as not worthy of belief.

**D.  NO SYMPATHY OR BIAS**

In determining the issues of fact and rendering a verdict in this case, you should perform your duty with complete impartiality and without bias, sympathy, or prejudice as to any party. All parties are equal before the law and entitled to the same fair consideration. The Court expects that you will carefully and impartially consider all the evidence, follow the law as is now being given to you, and reach a just verdict, regardless of the consequences.

**E.  BURDEN OF PROOF- PREPONDERANCE OF THE EVIDENCE**

As a general rule, in a civil action such as this, Plaintiff has the burden of proving each of the essential elements of her claims by a preponderance of the evidence. If the proof fails to establish any essential element of her claims by a preponderance of the evidence, you should find for Defendants. To establish a claim "by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, produces in your mind the belief that what is sought to be proved is, more likely than not, true.

A preponderance of the evidence means the greater weight of the evidence. That does not mean the greater number of witnesses, or the greater length of the time taken by either side. This determination is based on the quality and persuasiveness of the evidence—the weight and effect it has on your mind.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is in balance or evenly divided between the parties, that it is equally probable that one side is right as it is that the other side is right, or that the evidence produced by the party having the burden of proof is outweighed by evidence against his or her claim, then you must decide that issue against the party having the burden of proof, or Plaintiff in this case. That is because the party bearing the burden, in this case Plaintiff, must prove more than simply equality of evidence—he must prove the element at issue by a preponderance of the evidence. On the other hand, Plaintiff need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of Plaintiff—that what she claims is more likely true than not true—then the element will have been proved by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

## F.  IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

You have heard evidence that at some earlier time a witness has said or done something which counsel has argued is inconsistent with the witness's testimony at trial.

Prior inconsistent statements made under oath can be admitted as affirmative evidence, i.e., for their truth, as opposed to unsworn statements that are only admissible for impeachment. Evidence of a prior inconsistent statement not made under oath is not to be considered by you as

affirmative evidence in determining liability. Evidence of a prior unsworn inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

## G. DEPOSITION TESTIMONY

During the trial, certain testimony has been read to you from transcripts of depositions taken at an earlier stage of the case. Depositions are examinations of witnesses, under oath, by one or more of the attorneys in the case before trial. The attorney's questions, and the witness's answers, are recorded by a stenographic reporter. You should treat a witness's deposition testimony the same as if that testimony had been given live here in court, and weigh and consider it, and judge its credibility, using the same standards you would use with respect to any other evidence.

## III.   SUBSTANTIVE LAW

I will now turn to the second part of this charge and instruct you as to the legal elements of Plaintiff's claims.

### A. TITLE VII (Federal Statutes Involved)

Plaintiff's claims of race/color, gender/sex, and national origin discrimination in the form of a hostile work environment claim against Defendants are brought under a federal law known as Title VII of the Civil Rights Act of 1964, as amended. Title VII provides for claims against an employer—not the individuals alleged to have acted in a discriminatory manner. So, in this case, Plaintiff's Title VII claim is against Corporate Defendants USAFLH and RCGEG, based on the alleged discriminatory actions of Plaintiff's supervisor Defendant TSIMBLER.

Title VII is designed to assure equality of employment opportunities and ensure that all persons enjoy full and adequate protection against employment discrimination. Among other things, Title VII makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to the terms, conditions, or privileges of employment, because of such individual's race; or to limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee because of such individual's race.

### B. DISCRIMINATION: HOSTILE WORK ENVIRONMENT

Plaintiff claims that her supervisor harassed her based on her race/color, gender/sex, and national origin, and that Corporate Defendants are liable for that conduct under Title VII of the Civil Rights Act of 1964, as amended, the New York Executive Law, and the New York City

Human Rights Law. The focus is on whether Plaintiff was harassed through unequal treatment because of her race/color, gender/sex, and/or national origin.

In order to prevail on her claim, Plaintiff must establish, by a preponderance of credible evidence, each of the following elements:

First, that a hostile work environment existed;

Second, that the hostile work environment was motivated, at least in part, by Plaintiff's protected class- race/color, gender/sex, and/or national origin; and

Third, that the abusive conduct complained of can be imputed to one or more Defendants.

I will now explain the elements of Plaintiff's claims in more detail.

## 1. FIRST ELEMENT: HOSTILE WORK ENVIRONMENT

First, Plaintiff contends that the treatment She suffered on account of her race/color, gender/sex, and/or national origin —those being African American/Black, female, and Grenadian, respectively—was the creation of what is called an unlawful hostile work environment.

Under Title VII, a hostile work environment is determined by a totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance*."*

Under New York City law,  Plaintiff need only demonstrate by a preponderance of the evidence that she was treated less well than other employees because of her race/color, gender/sex, and/or national origin. Indeed, the challenged conduct need not even be tangible, like

hiring or firing. A hostile work environment must be true both subjectively and objectively, meaning that Plaintiff herself did, and a reasonable person in Plaintiff's position would, find his or her work environment hostile or offensive. However, the law governing unlawful harassment does not create a claim for all unpleasant or abusive behavior in the workplace; it is not a general civility code and does not protect against the normal tribulations of the workplace, petty slights, and trivial inconveniences.

### 2.  SECOND ELEMENT: DISCRIMINATION TIED TO PROTECTED CLASS

Second, Plaintiff must establish that she was subjected to the hostile work environment, at least in part, because of her race/color, gender/sex, and/or national origin, meaning either one, two, or all of those protected classes was a motivating factor behind the discriminatory treatment she alleges she was subjected to. During the course of the trial, you have heard Plaintiff testify that she felt "harassed" by the conduct in her workplace. In this lawsuit, "harassment" has a specific legal meaning, which may be different from the way that the average person uses the word. In order for you to find that Plaintiff has established her claim of harassment, you must find that the conduct complained of occurred because of her race/color, gender/sex, and/or national origin. Rude, boorish, gruff, or unprofessional behavior that may have been directed at Plaintiff for a reason other than her race/color, gender/sex, and/or national origin does not establish her claim of a hostile work environment based on race/color, gender/sex, and/or national origin.

### 3.  THIRD ELEMENT: IMPUTATION OF CONDUCT TO DEFENDANTS

Third, to hold Corporate Defendants USALFH and RCGEG liable for the alleged misconduct of Plaintiff's supervisor, Defendant TSIMBLER, Plaintiff must establish that the Corporate

Defendants USALFH and RCGEG failed to provide a reasonable avenue for complaint or that Corporate Defendants USALFH and RCGEG knew, or reasonably should have known, about the harassment, yet failed to take appropriate remedial action. To succeed on the theory Corporate Defendants USALFH and RCGEG knew, or reasonably should have known, of Defendant TSIMBLER's harassment but failed to take appropriate remedial action, Plaintiff must show:

> First, that someone had actual or constructive knowledge of Defendant TSIMBLER's alleged harassment; "constructive knowledge" means that someone, with the exercise of reasonable care, should have known;

> Second, that the knowledge of that individual can be imputed to Corporate Defendants USALFH and RCGEG, either because that individual was at a sufficiently high level in the USALFH and RCGEG management hierarchy to qualify as a proxy for USALFH and RCGEG; or the individual is charged with a duty to act on the knowledge and stop the harassment; or the individual is charged with a duty to inform USALFH and RCGEG of the harassment; and

> Third, that in light of that knowledge, USALFH and RCGEG response was unreasonable, which is to be determined based on all the circumstances, including the gravity of the harm inflicted on Plaintiff, the nature of USALFH and RCGEG response in light of USALFH and RCGEG resources, and the nature of USALFH's and RCGEG's work environment.

Liability under the New York City Human Rights Law for the employer itself—in this case, Corporate Defendants USALFH and RCGEG—can arise in any one of three circumstances: (i) where the offending employee exercised managerial or supervisory responsibility; (ii) where

the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; or (iii) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it.

Corporate Defendants USALFH and RCGEG can only be deemed to have known about any unlawful conduct if Plaintiff demonstrates by a preponderance of the evidence that the race/color, gender/sex, and/or national origin-based hostile work environment was known by one of Plaintiff's supervisors or managers. The knowledge Plaintiff must prove must relate to the race/color, gender/sex, and national origin-based hostile work environment, and not just general complaints about the supervisor.

With respect to the individual Defendant TSIMBLER, as Plaintiff's supervisor, he is liable for discrimination under the New York City Human Rights Law if he caused Plaintiff to be subjected to an unlawful hostile work environment on the basis of Plaintiff's race/color, gender/sex, and national origin or if he participated in the conduct giving rise to the discrimination claim.

Under New York City Law, an individual may be held directly liable regardless of ownership or decision-making power.

## C. RETALIATION CLAIM

Plaintiff claims that Defendants retaliated against her because she complained of unlawful discrimination on account of her race/color, sex/gender, and national origin in violation of three statutes: Title VII of the Civil Rights Act of 1964, and the New York City Human Rights Law. Plaintiff's Title VII work-place harassment and discrimination claim is only against

Corporate Defendants USALFH and RCGEG.  Plaintiff's New York Executive Law discrimination and retaliation claim is against all Defendants, individually and collectively. Plaintiff's New York City Human Rights Law discrimination and retaliation claim is against all Defendants, individually and collectively.  Under the applicable rules of law, Plaintiff must establish, by a preponderance of the evidence, the following four elements to prove her retaliation claim:

First, that Plaintiff participated in a protected activity;

Second, that her employer knew of Plaintiff's participation in this protected activity;

Third, the Plaintiff was subjected to an adverse action; and

Fourth, that there was a causal connection between the protected activity and the adverse employment action.

I will now explain each of these elements in more detail.

## 1.  FIRST ELEMENT: "PARTICIPATION IN A KNOWN PROTECTED ACTIVITY"

Plaintiff claims that she engaged in a known protected activity by complaining about discrimination in her employment, namely, that she was being harassed and discriminated against at her place of employment because of her race/color, sex/gender, and national origin. Opposing discrimination in employment is a protected activity, whether justified or not. The definition of protected activity encompasses informal protests of discriminatory employment practices and

includes making complaints to management or to an OEO office. Finally, even if you find that Plaintiff has failed to demonstrate by a preponderance of the evidence that Defendants subjected her to a hostile work environment, you may still find that they retaliated against her for engaging in protected activity.

## 2.  SECOND ELEMENT: "EMPLOYER WAS AWARE OF THIS ACTIVITY"

If Plaintiff complained about what she believed, in good faith, was harassment based on race or gender discrimination, this would constitute a protected activity. But you must further determine whether Defendants knew that Plaintiff had complained of the alleged harassment. To establish a retaliation claim against Corporate Defendants USALFH and RCGEG, it is not necessary for Plaintiff to prove any specific actors or individuals knew that she had complained; rather, Plaintiff need only demonstrate general corporate knowledge by USALFH and RCGEG. To establish a retaliation claim against individual Defendant TSIMBLER, Plaintiff must establish that they were aware of her complaint.

An individual can be subject to liability for retaliation under the New York City Human Rights Law if they qualify as an "employer" or they "aided and abetted" the alleged retaliatory action. The Plaintiff claims that Defendant TSIMBLER is individually liable for unlawful retaliation. Defendant TSIMBLER can be held liable in his individual capacities as an "employer" if he had knowledge of the retaliatory conduct and held a supervisory role in the agency. Defendant TSIMBLER can also be held individually liable if he aided, abetted, incited, compelled or coerced an unlawful retaliatory practice. To prove that Defendant TSIMBLER "aided and abetted" a retaliatory action, Plaintiff must show that he actually participated in the conduct giving rise to Plaintiff's retaliation claim.

### 3.   THIRD ELEMENT: "ADVERSE ACTION"

Under Title VII, an adverse action must be "material," which means, in terms of a retaliation claim, it might have discouraged a reasonable worker from complaining about similar discrimination. The adverse action itself, however, need not be related to Plaintiff's employment. Title VII is violated when an adverse employment action would not have occurred but for a retaliatory motive; however, that improper motive need not be the sole cause. Under the New York City Human Rights Law, the retaliation complained of need not result in an ultimate action with respect to employment, or in a materially adverse change in the terms and conditions of employment, provided, however, that the retaliatory act or acts Plaintiff opposed or complained about must be reasonably likely to deter a person from engaging in protected activity.

### 4.   FOURTH ELEMENT: "CAUSAL CONNECTION"

Plaintiff must establish that there was a causal connection between her participation in a protected activity and the adverse employment action. Under Title VII, Plaintiff must establish that Corporate Defendants USALFH and RCGEG subjected her to the adverse employment action because of Plaintiff's participation in the protected activity. Under New York City Human Rights Law, Plaintiff must establish that retaliation played a part in the employer's decision. Plaintiff can establish this element directly, through evidence of retaliatory animus directed against Plaintiff by Defendants. Plaintiff can also establish this indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence. In determining this question of Defendants' motivation, you should consider all the evidence in the case, including the timing of the allegedly retaliatory act, the testimony of the witnesses, and the documents in evidence.

### 5.   PRETEXT FOR ALL RETALIATION CLAIMS

Defendants claim that they subjected Plaintiff to the adverse employment actions complained of in this case because of legitimate non-retaliatory reasons. With respect to Plaintiff's Title VII retaliation claim, if you decide that Corporate Defendants USA LFH and RC GEG had no non-retaliatory motive for the adverse employment actions, and that the adverse employment actions were solely motivated by retaliatory animus, then you must find for Plaintiff.

If the defendants you are considering had both retaliatory and non-retaliatory motives for taking the adverse employment actions against Plaintiff, however, then you must consider whether the retaliatory motive was the "but for" cause of the adverse employment action taken against Plaintiff. In other words, you must consider whether that defendant would have taken the adverse employment action against Plaintiff absent the retaliatory motive. If the defendant you are considering would not have taken the adverse employment action against Plaintiff absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but for" cause for the adverse employment action taken against Plaintiff, and you will find in her favor. If, on the other hand, you decide that the defendants would have taken the adverse employment action against Plaintiff even absent her complaint or its retaliatory intent, or if that defendant had no retaliatory motive at all, then you must find for that defendant on this claim.

However, with respect to Plaintiff's New York City Human Rights Law retaliation claims, even if you find that the defendants were motivated to some extent by non-retaliatory reasons, you can still find them liable for this claim if you find that they were also motivated, at least in part, by retaliatory animus.

In this regard, I instruct you that it is not your role to second guess the decisions of Defendants that are not based on discrimination or retaliation. Absent discrimination or retaliation, employers such as Defendants may subject an employee such as Plaintiff to an adverse employment action for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all. The sole inquiry here is whether Plaintiff has sustained her burden of proving by a preponderance of the evidence that Defendants were motivated to subject Plaintiff to an adverse employment action by the impermissible reason of retaliating against her for having engaged in protected activity. Plaintiff's own subjective belief that she was retaliated against is not enough to meet her burden of proving that Defendants' stated reasons for their action were pretextual or a disguise for retaliation.

### D. EMPLOYEE VERSUS INDEPENDENT CONTRACTOR

Defendants claim that the Plaintiff was an independent contractor and not an employee.  The relevant considerations in determining whether an employment relationship exists is the degree of control exercised by the employer over the results produced or the means used to achieve those results.   You can consider the following factors when determining whether the Defendant exerted control over the Plaintiff.  These factors to determine as to whether an employee may be considered an independent contractor: 1) skills required to perform the job at issue (where a job requires training and exercise of independent judgment, this factor weighs in favor of independent contractor status; 2) the source of the instrumentalities and tools; 3) the location of the work; 4) the duration of the relationship between the parties; 5) whether the hiring party has the right to assign additional projects to the hired party; 6) the extent of the hired party's discretion over when and how long to work; 7) the method of payment; 8) the hired party's role in hiring and paying assistants; 9) whether the work is part of the regular business of the hiring

party; 10) whether the hiring party is in business; 11) the provision of employee benefits; and 12) the tax treatment of the hired party.

The most important factor in determining the existence of an employment relationship is "that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor."

What Plaintiff, Defendant, or anyone else labels Plaintiff is not dispositive as to whether Plaintiff is an employee or independent contractor.

An employer may not remove a worker who is actually an employee from the protection of the law simply by labeling him or her an independent contractor for tax purposes and the fact that Defendants prepared 1099 Forms indicating that Plaintiff received non-employee compensation is not dispositive of the issue.

With respect to the factors above, some facts you can consider:

Independent contractors are commonly paid upon completion of a specific job, with the pay keyed to the scale and nature of work as opposed to on a salaried or fixed basis.

An employer generally directs an employee as to which tasks to perform, while an independent contractor is typically hired only for particular contracts and obligated to perform only those tasks to which it has already agreed by contract.

Compensation primarily or exclusively on the basis of time worked (rather than projects completed or sales made) suggests that a worker is an employee.

A relatively short tenure [such as 28-35 days] ordinarily implies that a worker is an independent contractor.

If the worker uses their own instruments and tools, it weighs in favor of the Independent Contractor classification and if they are provided instruments and tools by the employer, it weighs in favor of an employer/employee relationship.

Independent Contractors are covered under the city law.

E.  DEFAMATION

The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se.  A statement is defamatory per se if it imputes unchastity to a woman.

IV.  **DAMAGES**

I am about to instruct you as to the proper measure of the damages that you will be considering. If Plaintiff has proven by a preponderance of the evidence that Defendants are liable on Plaintiff's claims, then you must determine the damages to which Plaintiff is entitled. However, you should not infer that Plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide liability, and instructions as to the measure of damages are given only for your guidance in the event that you should find in favor of Plaintiff in accordance with the other instructions that I have given you. In this case, Plaintiff is seeking damages for lost wages, benefits, compensatory damages for mental, emotional, and physical distress, pain and suffering, injury to her reputation, punitive damages, and attorney's fees.

Thus, if you find that Plaintiff has satisfied her burden of proving by a preponderance of the evidence that Plaintiff was subjected to a hostile work environment and the conduct giving rise

to that hostile work environment can be imputed to Defendants, then you must determine an amount that is fair compensation for Plaintiff's losses. Similarly, if you find that Plaintiff has satisfied her burden of proving by a preponderance of the evidence that Defendants retaliated against Plaintiff by subjecting her to an adverse employment action because of Plaintiff's participation in protected activity, you must determine an amount that is fair compensation for Plaintiff's losses.

You may award compensatory damages for injuries that Plaintiff has proved were caused by Defendants' wrongful conduct. The damages that you award must be fair compensation, no more and no less.

In determining the amount of damages, if any, that you decide to award, you should be guided by dispassionate common sense. You may not award damages based on sympathy or speculation. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

## A. MULTIPLE CLAIMS

I have one more cautionary instruction before I define the types of damages you may award, if you find that Plaintiff has proved liability according to the standards I have enumerated. You should not award compensatory damages more than once for the same injury. For example, if Plaintiff was to prevail on each of her claims and establish a one-dollar injury, you could not award her one dollar compensatory damages on each claim—she is only entitled to be made whole again,

not to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of the injuries.

### B. COMPENSATORY DAMAGES

Compensatory damages are designed to restore Plaintiff to the same position she was in prior to the injury – that is, to compensate her for the damage suffered as a direct result of Defendants' illegal conduct. Compensatory damages are available in this case for mental anguish, pain and suffering, humiliation, indignity, and embarrassment.

You may award compensatory damages to Plaintiff only if she proves, by a preponderance of the evidence, that his pain and suffering was actually caused by a hostile work environment based on race/color, gender/sex, national origin or because of retaliation. In other words, it is not enough that Plaintiff suffered mental pain; she must also prove that the suffering resulted from intentional discrimination or unlawful retaliation. Thus, even if you find that Defendants discriminated or retaliated against Plaintiff, you must still determine whether Plaintiff has proven, by a preponderance of the evidence, that such action caused, in whole or part, the pain and suffering alleged. If you believe that Plaintiff's pain and suffering was caused solely by some other employment action or event, you may not award compensatory damages. This is true even if you believe that the other employment action or event was wrongful or illegal. However, if you find that Plaintiff's pain and suffering was caused in part by Defendants' unlawful conduct, then you may compensate her for that degree or portion of the pain and suffering you find is attributable to the unlawful conduct and not some other employment action.

### C. NOMINAL DAMAGES

If you find that Defendants are liable on either of Plaintiff's claims but find that Plaintiff has failed to prove by a preponderance of the evidence that she suffered any actual damages, you

may, but are not required to, return an award of damages in some nominal or token amount not to exceed the sum of one dollar. You do not have to award any amount of damages if you find Plaintiff has failed to prove by a preponderance of the evidence that she suffered any actual damages.

### D.  PUNITIVE DAMAGES

If you find for Plaintiff, and if you award compensatory or nominal damages, you may also award punitive damages. You are not required to do so. The purposes of punitive damages are not to compensate the Plaintiff but rather to punish the defendant and to deter that defendant and others from committing similar acts in the future.  Plaintiff has the burden of proving that punitive damages should be awarded. You may award punitive damages only if you find that Defendant's conduct (1) was motivated by evil motive or intent, or (2) involved wanton negligence, recklessness, or callous indifference to the rights of others.

Plaintiff also has the burden of proving the amount of punitive damages that should be awarded. If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes stated above, but should not reflect bias, prejudice, or sympathy toward any party. The amount of any punitive damages should also bear a reasonable relationship to any injury or harm actually or potentially suffered by Plaintiff.

### V.    CLOSING INSTRUCTIONS

I have now outlined for you the rules of law applicable to this case, the process by which you weigh the evidence and determine the facts, and the legal elements which must be proved by a preponderance of the evidence. In a few minutes you will retire to the jury room for your deliberations. I will now give you some general rules regarding your deliberations. Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think

your verdict should be. That is entirely for you to decide. By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you. Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.

### A. FOREPERSON

In order for your deliberations to proceed in an orderly fashion, you must have a foreperson. The custom in this courthouse is for Juror No. 1 to act as the foreperson. However, if, when you begin deliberations, you decide that you want to elect another foreperson, you are entitled to do so. The foreperson will be responsible for signing all communications to the court and handing them to the Deputy Marshal during your deliberations, but, of course, his or her vote is entitled to no greater weight than that of any other juror.

### B. COMMUNICATION WITH THE COURT

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me, you may send a note, through the Deputy Marshal, signed by your foreperson. No member of the jury should attempt to communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching upon the merits of the case other than in writing, or orally here in open court.

### C. JUROR'S RECOLLECTION GOVERNS/REQUESTS FOR TRIAL TESTIMONY

Your recollection governs. Nobody else's. If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should find yourself in doubt concerning my instructions to you on the law, you may request that a witness's or witnesses'

testimony, or portions thereof, be sent back to you in the jury room. Again, you may make such a request by a note to the Deputy Marshal. I suggest, however, that you be specific to avoid receiving testimony that you do not want or need. Describe as best and precisely as you can what you want to hear and be patient because it sometimes takes a while to find the testimony in the record.

### D.  DELIBERATIONS AND UNANIMOUS VERDICT

Your duty is to reach a fair conclusion from the law and the evidence. It is an important one. When you are in the jury room, listen to each other, and discuss the evidence and issues in the case amongst yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper deference to, and regard for, the opinions of your fellow jurors.

You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced they are wrong. However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

The decision you reach must be unanimous; you must all agree. When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate what the verdict is. In no communication with the court should you give a numerical count of where the jury stands in its deliberations.

Remember in your deliberations that the dispute between the parties is, for them, no passing matter. They and the Court rely upon you to give full and conscientious deliberation and

consideration to the issues and evidence before you. By so doing, you carry out to the fullest your oaths as jurors to well and truly try the issues of this case and a true verdict render.

I will ask you to wait for a few moments while I discuss with counsel whether there is anything further about which you need to be charged.

